UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN E. PIERCE,

       Petitioner,                        CASE NO. 2:21-CV-13018

v.                                  HONORABLE NANCY G EDMUNDS

MICHAEL BURGESS,

       Respondent.

_____/

## OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

John E. Pierce, ("Petitioner"), confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for armed robbery, M.C.L.A. § 750.529 and being a fourth felony habitual offender, M.C.L.A. § 769.12. For the reasons that follow, the petition is DISMISSED WITH PREJUDICE.

### I. Background

Petitioner was convicted following a jury trial in the Macomb County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> A man wearing a black face mask, black leather jacket, and black hood robbed at gunpoint the office at a Public Storage facility at approximately 4:50 p.m. on October 30, 2017. The manager, Ashley McGee, testified that the robber had "bright blue" eyes and was approximately 5'9. Investigating officers found a security camera at a nearby business that captured the Public Storage parking lot. Around the time of the robbery, a silver sedan pulled up, a man exited from the passenger side door, and walked toward the office. Four minutes later, the man ran back to the car, entered, and the

1

car sped away. The man depicted in the footage was not wearing the mask, but his face was not clear either. McGee indicated that the man in the footage was dressed like the man who robbed her.

The investigating officer disseminated still shots of the man and the silver vehicle from the security footage. Another officer recognized the man and vehicle from a traffic stop five days before the robbery and was able to identify the individual by name as defendant. From there, the investigating officer tracked down the vehicle owner, Gail Wodarski, who confirmed that her cousin (defendant) and his girlfriend, Misty Burgess, were using her vehicle both at the time of the traffic stop and the robbery. Wordarski (sic) identified her vehicle in the security footage as it was missing the bumper and had replacement rims. She also identified the man in the footage as defendant as she recognized his walk and clothing.

After his arrest, defendant expressed desire to stop Burgess's prosecution. Defendant indicated that "he had picked up a hooker" that day and the hooker was "driving the car," not Burgess.

*People v. Pierce*, No. 344143, 2019 WL 6977833, at *1 (Mich. Ct. App. Dec. 19,

2019); *lv. den.* 506 Mich. 852, 946 N.W.2d 262 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Pierce was denied due process of law by a tainted and suggestive in-court identification, and trial counsel was ineffective for failing to move to suppress the in-court identification.

II. The trial court erred when it denied Pierce's motion for a mistrial based on the admission of other-acts evidence under Michigan Rule of Evidence 404(b)(1) and testimony from a detective regarding a prior encounter with Pierce.

III. Pierce should be resentenced without the habitual fourth notice as the prosecution cannot show that he was personally served with the notice to enhance, and no proof of service was filed with the court.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A.  Claim # 1. Suggestive identification/ineffective assistance of counsel claim.**

Petitioner first argues that the victim's in-court identification was the product of suggestive identification procedures. Alternatively, petitioner argues that counsel was ineffective for failing to object.

Respondent argues that at least a portion of the suggestive identification claim is procedurally defaulted because petitioner failed to object at trial.  Petitioner argues that trial counsel was ineffective for failing to object.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claim, it would be easier to consider the merits of the entire suggestive identification claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

4

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. See *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

The Michigan Court of Appeals rejected the claim as follows:

Defendant first argues that the trial court should have suppressed McGee's in-court identification of him. The in-court identification was tainted by unduly suggestive pretrial identification procedures, defendant asserts, and McGee's identification lacked an independent basis. Defendant further contends that his trial counsel was ineffective for failing to move to suppress the identification.

On the day of defendant's and Burgess's preliminary examinations, the prosecutor met with McGee at the courthouse. After instructing McGee about preliminary examination procedures, the prosecutor asked McGee to describe the clothing worn by the robber. The prosecutor then showed McGee a still shot from the security footage. McGee indicated that the man in the photo was wearing clothes similar to the robber's but that the person's face in the photo was too unclear to identify. The prosecutor did not conduct a photographic lineup or show McGee any other photos. McGee later noted that the officer did not identify the person in the photograph as defendant.

McGee was present in the courtroom gallery while a group of criminal defendants waited in the jury box for their matters to be heard. McGee observed defendant sitting at the defense table with his attorney and heard him waive his preliminary examination. McGee was then aware that defendant was the accused in her robbery—she knew the names of the two suspects and heard defendant's name announced in court. McGee remained in the courtroom after deputies directed defendant to a seat in the first row of the jury box. McGee then testified at Burgess's preliminary examination. McGee was required to "walk[ ] past [defendant] to sit down on the stand," looked "[q]uickly" at defendant's face, and recognized him as the robber. McGee did not comment on her recognition of defendant at the time. Four months later, McGee identified defendant as the robber at his trial. McGee asserted that defendant's "bluish" eyes gave him away, and she disagreed with defendant's contradictory description of his eyes as hazel.

*People v. Pierce*, 2019 WL 6977833, at *1–2.

The Michigan Court of Appeals concluded that the victim's in-court identification was not tainted by improper suggestive identification procedures and if it was, the victim's in-court identification had a sufficient independent basis. *Id.* at 2-3.

The Michigan Court of Appeals reasonably concluded that the victim's in-court identification was not the product of unduly suggestive identification procedures.

First, to the extent that petitioner argues that it was suggestive to have the victim attempt to identify petitioner from a photograph of the security footage from a nearby business showing the perpetrator at the time of the armed robbery, his claim is without merit.  "[L]ittle possibility of misidentification arises from the use of photographs depicting 'the likeness not of some possible suspect in the police files, but of the [persons] who actually committed the [crime].'" *United States v. Monks*, 774 F.2d 945, 957 (9th Cir. 1985)(quoting *United States v. Evans*, 484 F.2d 1178, 1186 (2nd Cir. 1973)).  To refresh a witness' memory from a source [that depicts the actual perpetrator of the crime] runs "a significantly smaller risk of misidentification than to refresh it from a source unrelated to the actual events." *Evans,* 484 F.2d at 1186.  In this case, it was not impermissibly suggestive for the victim to view a photograph which depicted petitioner in the process of committing the armed robbery. *See United States v. Bridgefourth*, 538 F.2d 1251, 1253 (6th Cir. 1976); *see also United States v. Peterson,* 411 F. App'x 857, 865 (6th Cir. 2011)(police officer's inquiry whether eyewitness could identify bank robber from photo array was not unduly suggestive, in violation of defendant's due process rights, even if witness viewed photographs of robber in newspaper before identification; photograph of robber in newspaper was taken from bank's security camera during commission of

robbery and would have been no different than what witness saw at bank).  Here, the victim was unable to identify petitioner's face but was only able to indicate that the person in the photograph wore the same clothing as the man who robbed her.

Secondly, the victim's identification of petitioner in the courtroom at the preliminary examination was not unduly suggestive, because as the Michigan Court of Appeals noted in its opinion, her viewing of petitioner was not the product of an actual lineup but was incidental to testifying at Burgess' preliminary examination. *People v. Pierce*, 2019 WL 6977833, at *3.  As one court has noted: "unarranged confrontations of this sort have not been considered suggestive." *Reese v. Fulcomer*, 946 F.2d 247, 261 (3d Cir. 1991)(confrontation procedure was not impermissibly suggestive, even though victim viewed defendant before each of two preliminary hearings and directly before trial; there was no evidence that such viewings were deliberately arranged by government).  Other courts have reached the same conclusion. *United States v. Domina*, 784 F.2d 1361, 1369–70 (9th Cir. 1986)(robbery victim's observation of the defendant exiting from a courtroom during recess and recognizing the defendant as the robber was not considered unduly suggestive; victim was not expecting to see the defendant and he was not manacled, escorted by marshals, or singled out to her); *United States v. Wade*, 740 F.2d 625, 627-28 (8th Cir. 1984)(pretrial identification of defendant by witness who, while standing outside courtroom before her testimony, pointed out defendant as one of the robbers of bank where witness was employed was not an improperly suggestive confrontation that tainted witness' subsequent identification testimony). The victim's viewing of petitioner at the preliminary examination was at most only minimally suggestive, particularly where there is no allegation that the prosecutor or police

suggested to the victim that petitioner was her assailant. *See Howard v. Bouchard*, 405 F.3d 459, 470 (6th Cir. 2005)

This Court notes that "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d at 843. Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012). In the absence of a showing that the pre-trial identification procedures were unduly suggestive, there was no basis to suppress the identification.

Moreover, assuming that the pre-trial identification procedures were unduly suggestive, the victim had a sufficient independent basis for her in-court identification of petitioner as her assailant:

> [M]cGee observed the robber for approximately two minutes within arm's reach in the daylight. Although defendant had noticeable tattoos on his hands that McGee did not describe, McGee testified that she only really looked at the robber's eyes. McGee described the robber's eyes as "bright blue," but noted that defendant's eyes were only "bluish."

*People v. Pierce*, 2019 WL 6977833, at *3.

The victim testified that she was arm's length from petitioner and was able to focus on his eyes. The victim never identified anyone else as being her assailant. These factors all support the trial court's finding that an independent basis existed for the victim's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001).

Moreover, with respect to the victim's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d at 473; *see also United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004)(finding heightened degree of attention where witness spoke with robber and studied his features while looking for an opportunity to escape); *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun).  In light of the fact that the victim was being robbed at gunpoint, it was not unreasonable for the state courts to conclude that she paid a high degree of attention to her assailant.

Moreover, even if there were slight discrepancies between the victim's initial description of her assailant and petitioner's appearance, as petitioner alleges, this would be insufficient to render the in-court identification suspect, in light of the fact that the victim was able to get a good look at petitioner and testified that she was certain in her identification of petitioner as being the suspect. *See United States v. Hill,* 967 F.2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification).

Finally, the reliability of the victim's in-court identification is supported by the fact that she "testified without equivocation" that petitioner was her assailant. *Howard,* 405 F.3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848.

The investigating officer disseminated still shots of the perpetrator and the silver vehicle from the security footage.  Another police officer recognized the man and vehicle from a traffic stop made five days before the robbery and identified the man in the photograph as petitioner.  Gail Wodarski, petitioner's cousin, confirmed that petitioner and his girlfriend, Misty Burgess, were using her vehicle both at the time of the traffic stop and the robbery.  Wodarski identified her vehicle in the security footage and identified the man in the footage as petitioner from his walk and clothing. Finally, the Michigan Court of Appeals noted that two days after his arrest, petitioner "essentially admitted his guilt to Detective Booton while providing an alibi for Burgess." *People v. Pierce*, 2019 WL 6977833, at *5.  Given all of the above evidence against petitioner, any error in admission of the victim's allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis,* 21 F. App'x 360, 363 (6th Cir. 2001).

Petitioner also claims that trial counsel was ineffective for failing to object to the victim's identification.

To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims

of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

In light of the fact that petitioner failed to show that the identification procedure employed with the victim was unduly suggestive, he failed to show that his lawyer was ineffective for failing to move for suppression of the victim's pre-trial identification. *See Perkins v. McKee,* 411 F. App'x 822, 833 (6th Cir. 2011).  Moreover, in light of the fact that the victim's identification of petitioner was independently reliable, for the reasons mentioned above, petitioner was not prejudiced, as required to establish ineffective assistance, by trial counsel's failure to make a pretrial motion to suppress the victim's in-court and out-of-court identifications on the basis that the pre-trial identification procedures were suggestive. *See Howard v. Bouchard,* 405 F.3d at 481-85. Finally, because of the additional evidence against petitioner in this case, counsel was not ineffective in failing to challenge the reliability of the victim's identification of petitioner. *See Riley v. Jones,* 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007). Petitioner is not entitled to relief on his first claim.

### B.  Claim # 2. The mistrial claim.

Petitioner next claims that the judge should have granted a mistrial after the detective referred to viewing a "booking" photograph of petitioner to identify him.

The Michigan Court of Appeals rejected the claim because the officer's testimony was non-responsive and because a curative instruction was given by the judge to the jurors to disregard the testimony. *People v. Pierce*, 2019 WL 6977833, at *4-5.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).

The Michigan Court of Appeals reasonably concluded that the trial court did not err in refusing to grant a mistrial based on the brief references to petitioner's "booking" photograph because the reference was obscure and minimal and there was no showing that the prosecutor introduced any of this testimony in bad faith. *See United States v. Talley*, 164 F.3d 989, 1002 (6th Cir. 1999). The detective's remark about viewing the "booking" photograph did not render the trial fundamentally unfair, where the remark was unsolicited, it was made in response to a proper line of questioning by the prosecutor, and there was no evidence of the prosecution's bad faith. *See Zuern v. Tate*, 336 F.3d 478, 485-86 (6th Cir. 2003). Because the detective's brief remark about viewing a "booking" photograph was unsolicited by the prosecutor, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against petitioner. *See U.S. v. Martinez,* 430 F.3d 317, 337 (6th Cir. 2005)*.*

In addition, the detective's brief remark about viewing a "booking" photograph was not so prejudicial as to require a mistrial, considering the trial court's immediate instruction to the jury that they were to disregard the comment. *See United States v. Beamus,* 110 F. App'x 513, 517 (6th Cir. 2004)(testimony that defendant was "on the run" from probation was not *per se* prejudicial, so as to warrant mistrial, where jury was immediately told to disregard that single, isolated remark); *United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir. 1999)(police officer's allusion to defendant's prior arrest did not require a new trial since it was isolated and district court gave an immediate curative instruction);

12

*United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)(court did not abuse its discretion in not granting defendant's motion for mistrial, though agent's statement regarding defendant's previous incarceration directly contravened judge's specific warning, where judge provided clear admonition).  Moreover, not only did the trial court judge tell the jury to disregard the comment, the judge also advised the jury during final instructions not to consider anything that had not been admitted into evidence. (ECF No. 8-8, PageID.852). A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000).The judge's instructions cured any potential error in this case.  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3. The habitual offender notice claim.

Petitioner finally claims that the fourth habitual offender charge should be set aside because he was never given advance notice by the prosecutor of his intent to charge petitioner as a habitual offender.

Petitioner's claim involving the application of Michigan's habitual offender laws is non-cognizable on habeas review, because it involves an application of state law. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008). Petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan law thus does not state a claim that is cognizable in federal habeas review. *See Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1240-41 (E.D. Mich. 1993).  Due process does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender charge.  Due process only requires that a defendant be given reasonable notice and opportunity to be heard relative to the habitual offender charge. *Oyler v. Boles,* 368 U.S. 448, 452 (1962).

13

Petitioner did not dispute, either at his sentencing, or more importantly, in his habeas petition, that he had prior convictions that would make him eligible to be sentenced as a habitual offender, nor did he object or seek a continuance based on the absence of advance notice of the sentence enhancement. Therefore, petitioner cannot complain that he was denied due process. *Oyler,* 368 U.S. at 453-54.

## IV.  Conclusion

The petition is denied with prejudice.  The Court denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED That a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner is DENIED leave to appeal *in forma pauperis*.

                                        s/ Nancy G. Edmunds
                                        NANCY G. EDMUNDS
Dated:  July 24, 2023                   U.S. DISTRICT JUDGE